## Robertson et al. v. Robertson et al.

(Decided January 28, 1930.)

HOLLAND G. BRYAN and WHEELER & HUGHES for appellants.

J. D. MOCQUOT for appellees.

OPINION OF THE COURT BY COMMISSIONER STANLEY— Reversing.

On appeal from an order of the McCracken county court, probating the will of Mrs. Nannie L. Jennings, the circuit court held it had not been executed in accordance with the law, and set aside the order.

The will was typewritten and not a holographic one. On the day of its attestation Mrs. Jennings called a neighbor and asked her to come over and witness her will. She then called another neighbor and made the same request of her. The day before she had told one of these ladies that she wanted her to come over the next day to witness her will. The three ladies together went in the house where the will was lying on a table folded in such a manner that the place for the testatrix's signature was not visible. Both witnesses promptly signed the document in the presence of each other and of the testatrix, and after a few minutes departed. Very few words were spoken, but neither of them remembered exactly what was said. They both thoroughly understood however that the document was Mrs. Jennings' will, which she had requested them to witness. Neither witness had any recollection of the testatrix signing the will while they were there, and neither was able to say whether her signature was on it or not on it at the time. It is admitted that the name appearing on the will is the true signature of the testatrix. Below it and above the signatures of the witnesses is this certificate: "Signed, sealed, published and declared by the above named Nannie L. Jennings, as and for her last will and testament, in the presence of us, who have hereunto subscribed our names at her request as witnesses thereto, in the presence of the said testator, and each other."

The right to dispose of one's estate by will is statutory. A will is defined by the old writers as a legal declaration of intention which the testator wills to be performed after his death. A paper not possessing the requisites demanded by the law fails in its attempted purposes. It must be executed in the manner prescribed by the statute. If not, it is ineffective. The method provided in Kentucky is by section 4828, of the Statutes, which, for convenient consideration, is here quoted:

"No will shall be valid unless it is in writing with the name of the testator subscribed thereto by himself, or by some other person in his presence and

by his direction; and, moreover, if not wholly written by the testator, the subscription shall be made or the will acknowledged by him in the presence of at least two credible witnesses, who shall subscribe the will with their names in the presence of the testator.''

It will be observed that the paper must have been signed by the maker or for him in the presence of two witnesses, or that the will must have been acknowledged by the testator in the presence of two witnesses. In either event the witnesses must subscribe their names in the presence of the testator. Until the document has been signed by the testator it is no will and is not the complete expression of his testamentary intention. Hence, it is generally held that the signing by the maker must precede his acknowledgment and the signing by the witnesses, for it is not possible to bear witness to a future event. However, where the signing by all is a part of the same transaction and takes place at the same time, the will is not invalidated by the fact that in point of actual time the attestation preceded the signing by the testator. Swift v. Wiley, 40 Ky. (1 B. Mon.) 114; Alexander's Commentaries on Wills, secs. 447, 448.

Mr. Schouler, in his work on Wills, at sec. 321, points out that there is one line of statutes, or expressions in statutes, following the Statute of 1 Victoria which made the signature the subject of acknowledgment, and another line following the old English Statute of Frauds which made the will the subject of acknowledgment. In the former a stricter rule of construction has been adopted. Our statute specifically refers to the will as being the subject of acknowledgment and not the signature, so that the more liberal rule should be applied.

Acknowledgment is implied from a request to the witnesses to attest the signature (Tudor v. Tudor, 17 B. Mon. 383; Farmer's Ex'r v. Farmer's Ex'r, 213 Ky. 147, 280 S. W. 947), but that acknowledgment must be subsequent to or practically simultaneous with the signing by the testator. The special judge who heard the evidence was of the opinion that under the undisputed state of facts he was bound by the cases of Limbach v. Bolin, 169 Ky. 204, 183 S. W. 495, L. R. A. 1916D, 1059, and Catlett v. Satterfield, 199 Ky. 617, 251 S. W. 659. Although he pointed out the difference in the facts, he concluded that those opinions require affirmative proof of a signing

by a testator before acknowledgment, and the evidence in this case was negative. But we do not regard those cases as controlling. In the Limbach case the maker had one witness to attest his will, took it across town, and then signed it himself before the second witness. He never acknowledged the paper before the first witness after having signed it. In the Catlett case one witness did not sign in testatrix's presence, but attested his signature after the will was executed by the testatrix and the other witness and delivered to him by that person for signing and safe-keeping. There was, therefore, in both cases positive proof that it was not executed in accordance with the statute. In the instant case both witnesses signed in the presence of the testatrix and she acknowledged it before them.

A case more nearly in point, it seems to us, is Reed v. Hendrix's Ex'r, 180 Ky. 57, 201 S. W. 482, L. R. A. 1918E, 423. In that case testatrix requested two friends to call at her home and witness her will. They were asked by the draftsman of the will in the presence of the testatrix if they had come to witness her will, and, answering that they had come for that purpose, then signed the will as witnesses in the presence of the testatrix, who said nothing. Her conduct under all the circumstances constituted an acknowledgment of the will. It appeared that a portion of the paper below where it was folded and subsequently shown to contain a part of the last line of the instrument and a name different from the testatrix, but intended to be and construed as her signature by mark, was visible to the witnesses, although they were not clear as to having seen the name. The witnesses could not, of course, say at the time that the testatrix had thus signed the instrument which was subsequently held to be sufficient as her signature, for it was not only incorrect but bore a cross-mark between the Christian and surname, indicating that it was written by another. Between that signature and the place where the witness signed, however, there was a certificate that it had been signed and published by the testatrix as and for her last will in the presence of the witnesses, and that they signed it in her presence and in the presence of each other. A similar certificate, as shown above, appears on this Jennings will. The difference in the facts of the two cases is simply this: In the one a name different from testatrix's name was visible, and in the other no name was visible, the paper being folded below the place for the testatrix's signature.

If Mrs. Jennings had signed this paper before producing it to the witnesses it was properly executed. If it was signed afterward, it was improperly executed. The positive and direct proof is that all the requirements of the statute were met except the visible presence of the testatrix's signature on the instrument at the time she acknowledged it as her will and the witnesses attested it. As to that matter, important as it is, there is no evidence one way or the other. Which is the stronger and more reasonable presumption—that the paper, bearing the genuine signature of the deceased and thus established as an expression of her will, without even the suspicion of fraud attending, was executed in full conformity with the statute as construed; or that the purposes of these formalities, namely, to provide against false and fraudulent wills and to afford means of identity and authenticity, have not been accomplished? If the object and intention of publication and attestation of a will can be reached without a violation of the express language of the statute, and there has been a substantial compliance with its essential terms, that is all that should be and is required. Porter v. Ford, 82 Ky. 191. The privilege of disposing of one's estate by will is a valuable right, and it has been written that he should not be deprived of this right upon slight, remote, or unsubstantial testimony. Langford's Ex'r v. Miles, 189 Ky. 515, 225 S. W. 246. We, therefore, think that in a state of case like this that it should be presumed that the testatrix signed the will before she acknowledged it and vitality should be given the will. Such seems to be the general rule. In Thompson on Wills, sec. 448, it is said:

"A presumption of the due execution of a will arises from the presence of a perfect and formal attestation clause which recites the facts necessary to a valid execution of the will."

We have this statement in section 521 of Schouler on Wills:

"A testator's declaration before three witnesses that the instrument produced and already signed by him was his will, was equivalent to signing it before them. And more than this, though he merely asked the witnesses to sign, as such, the paper he produced which bore his signature, and they did so, neither seeing his signature nor knowing what was the nature of the instrument thus attested, the statute,

nevertheless, was satisfied; supposing of course that this whole transaction imported consistently the full testamentary intent on his part.''

And section 523 of the same text is as follows:

''It is possible that the testator's signature was on the will where the witnesses might have seen it, but inadvertently did not; it is possible, too, that the precise circumstances of attestation may have faded from the recollection of a witness by the time the will is presented for probate. Where all appears regular on the face of the will a due attestation should be presumed; and direct evidence that the name of the testator was visible on the face of the will when it was produced for witnesses to sign is certainly not necessary. The result of the cases under the statute of Victoria, where acknowledging and not signing in presence is relied upon, or in other words, the testator's signature was already upon the will when it was produced to the witnesses for their attestation, appears to be this: that in the absence of direct evidence on the point one way or the other, the court may, independently of any positive evidence, investigate the circumstances of the case, and may form its own opinion from these circumstances, and from the appearance of the document itself, whether the name of the testator was or was not upon it (or rather might not have been seen), at the time of the attestation. But the court should mainly consider whether the witnesses did not see, or at least have an opportunity of seeing, the testator's signature when they attested; for if they did not, it is immaterial that the signature was actually there, but hidden from them.

''As with the general presumption in favor of a due attestation where all appears regular on the face of the will, so should it be presumed that the testator signed the instrument first and before either of his witnesses subscribed. Of course a genuine testamentary intention should exist on the maker's part; but all is presumed regular where the face of the will indicates it.''

See, also, 28 R. C. L. 128; 40 Cyc. 1273; and Estate of Carey, 56 Colo. 77, 136 P. 1175, 51 L. R. A. (N. S.) 927, Ann. Cas. 1915B, p. 951, and the annotations thereto.

In Hobart v. Hobart, 154 Ill. 610, 39 N. E. 581, 45 Am. St. Rep. 151,. it is shown that the Illinois statute as there construed is much like thé Kentucky statute in this regard. The facts in that case are similar to this one, and it was there held that, where the testator requested the witnesses to attest his will, such declaration or request implied that it has been signed by him and furnished presumptive proof that he had done so, thus making out a prima facie case in favor of the due execution of the will.

Another case strikingly similar is Gould v. Chicago Theological Seminary, 189 Ill. 282, 59 N. E. 536, 537. The subscribing witnesses to that will could not say whether or not the signature of the testator was upon the will at the time they signed it, and there was also, as here, an attestation clause containing a recital that the will had been signed. Said the court: ''Where there is proof that the signature to the will produced is the genuine signature of the testator, and that the two subscribing witnesses signed the attestation clause in his presence, a prima facie case is made in favor of the due execution of the will, and this prima facie case is not overcome by the mere fact that the subscribing witnesses testified that they failed to notice whether the will was signed or not.''

Many authorities are cited justifying this conclusion. In this state we have not only the recent case of Reed v. Hendrix's Ex'r, supra, closely in point, but the same principle applied in the early case of Pate's Adm'r v. Joe, 26 Ky. (3 J. J. Marsh.) 113, where one witness to the will was dead and the other had no memory as to its execution. Said the court: ''There is no positive proof that the testator's name in the present case was signed by his directions, or that the witnesses, Wm. and Elias Compton, attested the will by subscribing their names in the presence of the testator. Can the want of such proof be supplied by . secondary or presumptive evidence? We think it may be.''

After citing other authority the court declared that, since the genuineness of the signature of the witnesses was well established, the conclusion was well warranted that the will was executed in due form of law. And in Tudor v. Tudor, supra, as it related to the execution of a codicil, one subscribing witness was dead and the other testified to having signed the paper in the presence of the testator and at his request, but did not testify that

he saw testator sign or hear him acknowledge its execution. It was held the request to attest it contained and was an implied acknowledgment of its execution by testator.

There is a conflict in the authorities on this subject as will be seen from the annotations to Dougherty v. Crandall, 38 L. R. A. (N. S.) 161, to which reference is made in pursuit of the interesting question. But the rule applied in Illinois, Massachusetts, and perhaps other states where the doctrine of acknowledgment of the will rather than of the signature is followed, and the statutes are similar to ours, it seems to this court, is the better, although apparently the minority one.

In the execution of Mrs. Jennings' will all the requirements of the statute have been met: (1) Signed by testator; (2) acknowledgment before two competent witnesses; and (3) subscribed also by both witnesses in the testator's presence. It is certainly doing no violence either to the letter or the spirit of the statute to presume, from the facts adduced, that the signature was on the document before the acknowledgment and attestation.

The judgment is therefore reversed.